UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                       )    CRIMINAL NO. ~~00~~ 1:01cr10245 auw
        v.         )    VIOLATION:
                       )    18 U.S.C. § 371-
                       )    Conspiracy
BRADFORD C. COUNCILMAN,   )
       Defendant.      )

## INDICTMENT

COUNT ONE:    18 U.S.C. § 371 - Conspiracy

The Grand Jury charges:

At all times material to this Indictment:

1.    Defendant BRADFORD C. COUNCILMAN was an individual who resided in Montague, Massachusetts, and was a vice president and shareholder of Interloc, Inc. and its successor corporation Alibris.

2.    Until on or about May 8, 1998, Interloc, Inc. ("Interloc") was a Washington business corporation with a principal place of business in Greenfield, Massachusetts. Interloc was an on-line subscription list service for booksellers, and also did business under the name Valinet as an electronic service provider in the Greenfield, Massachusetts area.

3.    On or about May 8, 1998, Interloc merged into Alibris, a California business corporation, with a principal place of business in Emeryville, California.

4.    Among defendant BRADFORD C. COUNCILMAN's duties was to



operate, together with others, the electronic communications
service provided by Internet Service Provider Valinet and the
book dealer subscription list service operated by Interloc.

5.    From in or about January 1998 through in or about June
1998, at Greenfield, in the District of Massachusetts, and
elsewhere,

BRADFORD C. COUNCILMAN,

defendant herein, did knowingly, willfully and unlawfully
combine, conspire and agree with others known and unknown to the
Grand Jury, to commit offenses against the United States, to wit,

(a) to intentionally intercept and endeavor to intercept
electronic communications, in violation of Title 18, United
States Code, Section 2511(1)(a);

(b) to intentionally disclose, and endeavor to disclose, to
other persons the contents of electronic communications, knowing
and having reason to know that the information was obtained
through the unlawful interception of electronic communications,
in violation of Title 18, United States Code, Section 2511(1)(a);

(c) to intentionally use, and endeavor to use, the contents
of electronic communications, knowing and having reason to know
that the information was obtained through the unlawful
interception of electronic communications, in violation of Title
18, United States Code, Section 2511(1)(c); and

(d) to cause a person and entity providing an electronic

2

communication service to intentionally divulge the contents of communications while in transmission on that service to persons and entities other than the addressee, intended recipient of such communication, or an agent of the addressee or intended recipient, in violation of Title 18, United States Code, Section 2511(3)(a).

## Object of the Conspiracy

6.    It was the object of the conspiracy to intercept, store, disclose, and use electronic communications to which Interloc and the conspirators were not party, for the commercial advantage of Interloc's book dealer business, in violation of Title 18, United States Code, sections 2511(1)(a), (c), (d), and (3)(a).  In particular, the ultimate object of the conspiracy was to exploit the content of electronic mail from Amazon.com to dealers in order to develop a "most wanted" list of books, to learn about competitors, and for other commercial purposes entirely unrelated to the delivery of the electronic communications the conspirators intercepted.

7.    The interceptions, storage, disclosure, and use of the electronic mail messages were not for any legitimate purpose related to the maintenance of Interloc's electronic communications system, nor were they a necessary incident to the rendition of the communications service, nor to the protection of the rights or property of the provider of that service.

3

## Manner and Means of the Conspiracy

8.   At all times material to this Indictment, Interloc provided certain of its book dealer customers with an electronic mail address and acted as an electronic communications service provider with respect to the transmission of electronic mail to and from those dealers.  In other words, a particular dealer could send and receive electronic mail via Interloc using an address designated dealer@interloc.com.

9.   From at least 1996, Interloc employees, including COUNCILMAN, routinely read the contents of private communications to and from its member dealers, without their knowledge or permission.  They did so for reasons of commercial advantage and private commercial gain, and not as a necessary incident to the transmission and delivery of the electronic messages, or to protect or maintain the communications system or the rights of the provider.  In particular, Interloc employees, including COUNCILMAN, read electronic mail to and from customers of competitors bibliofind.com and Advanced Book Exchange (ABE) in order to create competitive advantage and to develop leads for new subscribers.  They also routinely monitored the traffic of messages from Amazon.com to subscribers.

10.  In or about January, 1998, COUNCILMAN approached Interloc's computer systems administrators to write computer code to intercept and copy all communications from Amazon.com to

4

subscriber dealers.  The purpose of this interception was to develop information that would lead to a competitive advantage for Interloc and enable it to develop a new business plan for Interloc's book business.  The plan to intercept and copy messages had nothing to do with the transmission and delivery of electronic communications.

11.  In January, 1998, at COUNCILMAN's direction and under his supervision, Interloc's systems administrator wrote a revision to the mail processing code, known as procmail.rc, designed to intercept, copy, and store, on an on-going and prospective basis, all incoming messages from Amazon.com.

12.  The procmail.rc script worked to intercept incoming electronic mail messages before they were delivered to the intended recipient's electronic mailbox and before the message was read by the intended recipient.  During the course of the conspiracy, thousands of electronic mail messages were intercepted and then stored for the purpose of analyzing the contents for commercial purposes relating to the bookselling business.

13.  In or about early June, 1998, Councilman and others devised a plan to create a database of commercial information, including a "most wanted" list, derived from the electronic messages intercepted from Amazon.com.

5

<u>Overt Acts</u>

14.   In furtherance of the conspiracy and to effect its object, the following overt acts took place in the District of Massachusetts:

a.   In or about January, 1998, defendant BRADFORD C. COUNCILMAN instructed two employees of Interloc, including systems administrator Michael Warchut, to alter the script of the procmail.rc computer routine so that certain categories of electronic mail messages, including all mail from Amazon.com, would be intercepted, filtered, and routed to a computer file.

b.   In or about January 1998, systems administrator Michael Warchut wrote and implemented the altered procmail.rc script to effect the interception COUNCILMAN had instructed him to cause. Warchut caused the intercepted messages to be stored for later analysis in a computer file called "nile" on the Interloc "host" computer.

c.   From on or about April 13, 1998, to on or about May 4, 1998, at least 3,067 electronic mail messages were intercepted by means of the procmail.rc device and stored in the "nile" file on Interloc's "host" computer.

d.   On or about April 13, 1998, COUNCILMAN disclosed to Russ Klein and others an electronic mail communication from Amazon.com dated April 7, 1998, to which neither COUNCILMAN nor any of the persons to whom he disclosed it was a party.

COUNCILMAN made the disclosure to promote Interloc's commercial advantage as an on-line bookdealer and list service, and not for any purpose related to the delivery of the communication to the intended recipient.

e.   In or about May, 1998, Warchut altered the procmail.rc script to change the computer location on which intercepted electronic mail messages would be stored from the Interloc "host" computer to the "blizzard" computer.

f.   On or about June 3, 1998, COUNCILMAN disclosed to Martin Manley and others an electronic mail communication from Amazon.com dated June 1, 1998, to which neither COUNCILMAN nor any of the persons to whom he disclosed it was a party. COUNCILMAN made the disclosure to promote Interloc's commercial advantage as an on-line bookdealer and list service, and not for any purpose related to the delivery of the communication to the intended recipient.

g.   Between on or about June 3, 1998, and June 8, 1998, at least 858 electronic mail communications, to which Interloc was not a party, were intercepted by use of the procmail.rc device and stored on the "blizzard" computer system.

All in violation of Title 18, United States Code, Section 371.

7

COUNT TWO:     18 U.S.C. § 371 - Conspiracy

The Grand Jury charges further:

15.  The allegations contained in paragraphs 1 through 4 are repeated and incorporated herein.

16.  In or about April 1998, at Greenfield, in the District of Massachusetts and elsewhere,

BRADFORD C. COUNCILMAN,

defendant herein, did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit, to intentionally access a computer without authorization and to exceed authorized access, and thereby to obtain information from a protected computer for the purposes of commercial advantage and private financial gain, which conduct involved interstate communication, in violation of Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B).

### Object of the Conspiracy

16.  It was the object of the conspiracy to obtain access to private portions of the computer system, including the website, of Studio 32, a computer software development firm located in San Francisco, California, and to obtain private information therefrom in order to prove that the unauthorized access had occurred.

17.  The conspirators' purpose in obtaining unauthorized

8

access and in obtaining the private information was to demonstrate the weakness in Studio 32's own computer security system and the relative superiority of the conspirators' skills. COUNCILMAN and the other conspirators hoped to convince Alibris executives that Studio 32's involvement in Alibris's computer upgrade project was unnecessary and that the Interloc operation headed by COUNCILMAN was better equipped to do the job.

18.   Studio 32's computer system was a "protected computer" within the meaning of Title 18, United States Code, Section 1030(e)(2)(B), in that the system was used in interstate and foreign commerce and communication.

Overt Acts

19.   In furtherance of and to effect the object of the conspiracy, the following overt acts were committed in the District of Massachusetts:

a.   In or about late March 1998, the systems administrator of Interloc gained unauthorized access to the Studio 32 computer network through the Windows NT operating system using a hole in the system's password program.  This conduct required interstate communication between Massachusetts and California.

b.   Shortly thereafter, COUNCILMAN instructed the systems administrator to again gain unauthorized access to Studio 32's system and retrieve information in order to prove that the unauthorized access had been obtained.

9

c.    On or about March 30, 1998, the systems administrator, upon COUNCILMAN's instruction, gained unauthorized access to the system, including computers named "rover", "belvedere", "lam", "mcfrimobile", "bootsy", "vc1", and "vc2", and thereby obtained private information from Studio 32's protected computer, including confidential business information.

d.    On or about April 1, 1998, COUNCILMAN reported to Alibris that Studio 32's system was insecure, and stated, "This morning we looked at everything from their accounting data to their contact database, as well as documents relating to our project and their other customers as well. . . .  I'm starting to think in terms of 'let's give them another 8 hours on this, and then fire them!' . . .  My guys are starting to look better and better (and cheaper too). . . .".

All in violation of Title 18, United States Code, Section 371.